# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
JAQUAN FRANKLIN,

                    Plaintiff,

      -against-

X GEAR 101, LLC, JOSHUA TYDLACKA,
GODADDY, INC.,GODADDY.COM, LLC, and
INSTAGRAM, LLC,

                    Defendants.
------------------------------------- x



MEMORANDUM DECISION
AND ORDER

17 Civ. 6452 (GBD) (GWG)

GEORGE B. DANIELS, United States District Judge:

    *Pro se* Plaintiff Jaquan Franklin brings this action against X Gear 101, LLC ("X Gear"), X Gear's alleged owner, Joshua Tydlacka (collectively, "X Gear Defendants"), Godaddy, Inc. and Godaddy.com, LLC, and Instagram, LLC (collectively, "Publishing Defendants"), alleging that Defendants infringed Plaintiff's copyright and trademark in a certain logo (the "ORIGINAL WORK Logo") by advertising and selling goods, or publishing images bearing a substantially identical logo without Plaintiff's consent. (Compl., ECF No. 1.) Publishing Defendants have moved to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). (Mot. to Dismiss, ECF No. 15; Mot. to Dismiss, ECF No. 34.). X Gear Defendants have also moved to dismiss the complaint for lack of personal jurisdiction pursuant to FRCP 12(b)(2) and for failure to state a claim pursuant to FRCP 12(b)(6). (Mot. to Dismiss, ECF No. 44; Mem. of Law in Support, ECF No. 45.)

    This Court referred this case to Magistrate Judge Gabriel W. Gorenstein. (Order, ECF No. 3.) Before this Court is Magistrate Judge Gorenstein's July 23, 2018 Report and Recommendation ("Report"), recommending that Publishing Defendants' motion to dismiss be granted, that X Gear Defendants' jurisdictional 12(b)(2) motion be denied, and X Gear Defendants' 12(b)(6) motion to

dismiss be granted as to Counts One, Five, and Six of the complaint, but denied as to Counts Two, Three, and Four. (Report, ECF No. 56, at 45.) In his Report, Magistrate Judge Gorenstein advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections on appeal. (*Id.* at 7–8); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). X Gear Defendants filed objections. (Objections, ECF No. 57.)

Having reviewed the unobjected to portions of the Report for clear error and the objected to portions *de novo*, this Court ADOPTS Magistrate Judge Gorenstein's Report in full. Publishing Defendants' motion to dismiss is GRANTED. X Gear Defendants' motion to dismiss for lack of personal jurisdiction is DENIED. X Gear Defendants' motion to dismiss for failure to state a claim is granted as to Counts One, Five, and Six of the complaint, but denied as to Counts Two, Three, and Four.

## I. LEGAL STANDARDS

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth within a magistrate judge's report. 28 U.S.C. § 636(b)(1). Portions of the magistrate judge's report to which objections are properly filed are reviewed *de novo*. 28 U.S.C. § 636(b)(1). Portions of a magistrate judge's report to which no objections have been made are reviewed for clear error. *Azkour v. Haouzi*, No. 11 Civ. 5780 (RJS), 2017 WL 3016942, at *4 (S.D.N.Y. July 17, 2017). Clear error is present only when "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted).

"*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*." *Thomas v. Westchester Cty.*, No. 12 Civ. 6718 (CS), 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). While courts read *pro se* complaints "to raise the strongest arguments that they suggest," *Pabon v.*

*Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (citation omitted and internal quotation marks), *pro se* plaintiffs "cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *Twombly*, 550 U.S. at 555). Dismissal is justified where "the complaint lacks an allegation regarding an element necessary to obtain relief," and the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (citations and internal alterations omitted); *see also Sharma v. D'Silva*, 157 F. Supp. 3d 293, 300 (S.D.N.Y. 2016).

"To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires pleading facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When the plaintiff is proceeding pro se, the court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that [it] suggest[s]." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted).

To survive a motion to dismiss for lack of personal jurisdiction, plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant(s). *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). Where "a court [has chosen] not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) (citation and internal quotation marks omitted). In deciding a 12(b)(2) motion, courts may consider affidavits and supporting

materials submitted by plaintiff, including plaintiff's opposition to the motion. *See College Essay Optimizer, LLC v. Edswell, Inc.*, No. 14 Civ. 8586 (LAK), 2015 WL 5729681, at *2 (S.D.N.Y. Sept. 30, 2015) (citing *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)). "Any materials presented by the plaintiff should be construed in the light most favorable to the plaintiff and all doubts resolved in [her] favor." *Wang v. Tavernier*, No. 13 Civ. 42976 (PGG), 2014 WL 11353150, at *3 (S.D.N.Y. Sept. 26, 2014) (citation and internal quotation marks committed).

## II. TYDLACKA AND X GEAR'S 12(B)(2) MOTION IS DENIED

X Gear Defendants' motion to dismiss for lack of personal jurisdiction is denied because exercising jurisdiction over both Defendants is permitted by New York's long-arm statute and comports with due process.

"In diversity or federal question cases, personal jurisdiction is determined in accordance with the law of the forum in which the federal court sits." *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 512 (S.D.N.Y. 2016) (citing *Whitaker*, 261 F.3d at 208). In determining whether specific personal jurisdiction exist, "district courts must conduct a two-part analysis, looking first to the state's long-arm statue and then analyzing whether jurisdiction comports with federal due process."[1] *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 37 (2d Cir. 2001).

Under Section 302(a)(1) of New York's long-arm statute, a court in New York may exercise jurisdiction over an out-of-state defendant "if (1) [the] defendant 'transacts any business within the state' and (2) the 'cause of action arises from' that business transaction." *Grand v. Schwarz*, No. 15 Civ. 8779 (KMW), 2016 WL 2733133, at *3 (S.D.N.Y. May 10, 2016)

---

[1] Plaintiff neither sufficiently alleges nor argues in his opposition papers that this Court has general jurisdiction over X Gear Defendants. (*See generally* Compl.; Opp'n, ECF No. 49.)

(alterations omitted) (quoting N.Y. C.P.L.R. § 302(a)(1)). A non-resident defendant "'transacts business' in New York when she 'purposefully avails herself to the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.'" *Grand*, 2016 WL 2733133, at *3 (*quoting CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)). "[T]ransacting business requires only a minimal quantity of activity, provided that it is of the right nature and quality." *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996). A single transaction may suffice for personal jurisdiction under Section 302(a)(1), even when the defendant is not physically present in the forum state. *Bank Brussels*, 171 F.3d at 787.

When personal jurisdiction is alleged primarily on the basis of an out-of-state defendant's website, New York courts frame the judicial inquiry by placing a website on a "spectrum of interactivity." On one end of the spectrum are "passive" websites, which simply allow users to view information. Such websites have "been analogized to an advertisement in a nationally-available magazine or newspaper, and does not without more justify the exercise of jurisdiction over the defendant." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000). At the other end are "interactive" websites, which sell goods, and services through the website. "Where an 'interactive' website is not only available but also purposefully directs activity into a forum state—for example, by making sales of goods or services to New York residents—those activities can be sufficient to trigger jurisdiction under section 302(a)(1)." *Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, No. 18 Civ. 2896 (JPO), 2018 WL 2022626, at *4 (S.D.N.Y. Apr. 30, 2018) (citations omitted). "When a website falls in the middle ground, a court must evaluate the website's level of contact and interactivity with New York residents." *Edswell, Inc.*, 2015 WL 5729681, at *4.

### A. First Prong of New York's Long-Arm Statute

Here, Plaintiff sufficiently alleges X Gear Defendants conduct business transactions with New York residents through an interactive website. Plaintiff alleges that both Defendants advertise and sell products from "an extensive catalogue of clothing items bearing an almost identical logo" as the ORIGINAL WORK Logo through their website www.xgear101.com. (Opp'n, ECF No. ECF No. 49, at 2.) Plaintiff also specifically alleges that both Defendants sell and ship these articles of clothing to consumers in New York City, which results in "recurring revenue and fees." (Opp'n at 2–3.)

X Gear Defendants object that Plaintiff fails to allege that X Gear "'targeted' its website at New York residents." (Objections at 8.) While mere allegations of the existence of an interactive website is insufficient to confer jurisdiction, Plaintiff's allegations go beyond the website itself to allege direct sales to and solicitation of business from New York. *See Edswell, Inc.*, 2015 WL 5729681, at *6. Courts have found this type of allegation to suffice for a prima facie showing of jurisdiction. *See, e.g., Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc.*, No. 00 Civ. 1971 (AGS), 2000 WL 1290585, at *4 (S.D.N.Y. Sept. 13, 2000); *City of New York v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526, 542 (S.D.N.Y. 2005).

As such, exercise of personal jurisdiction over X Gear Defendants is proper based on their interactive website that specifically targets New York.

### B. Second Prong of New York's Long-Arm Statute

Plaintiff also alleges that his claims arise out of X Gear Defendants' contacts with New York. Plaintiff alleges that X Gear Defendants infringed Plaintiff's trademark and copyright in the ORIGINAL WORK Logo by selling and shipping articles of clothing bearing a substantially identical logo directly to consumers in New York City through their website. (Compl. ¶¶ 22, 31;

Opp'n at 2.) Plaintiff further alleges that such activity "has already caused instances of actual confusion in the marketplace." (Compl. ¶ 32.)

This differs from an allegation that defendants simply "do business" in New York, which courts have found to be conclusory and insufficient for purposes of establishing personal jurisdiction. *See, e.g., Klutz v. Yagozzon, Inc.*, No. 16 Civ. 4538 (JSR), 2016 WL 5806902, at *2 (S.D.N.Y. Sept. 20, 2016) ("Plaintiff's conclusory allegation [that defendant did business in New York] is insufficient to establish personal jurisdiction."); *TAGC Mgmt., LLC v. Lehman*, 842 F. Supp. 2d 575, 582 (S.D.N.Y. 2012) (finding plaintiffs' allegation that the "defendants conduct business through an office located [in New York] to be insufficient to establish personal jurisdiction). Thus, Plaintiff has adequately pled the second prong of New York's long-arm statute.

## C. Constitutional Due Process

Exercising jurisdiction over X Gear Defendants also comports with due process because of Defendants' minimum contacts with New York. Here, X Gear Defendants have minimum contacts with New York because Plaintiff alleges that they purposefully advertised, sold, and shipped infringing products directly to consumers within the state. (*See* Compl. ¶¶ 22, 31; Opp'n at 2.) X Gear Defendants object that Plaintiff fails to indicate that either "defendant targeted or 'expressly aimed' their activities towards New York so as to establish the requisite minimum contacts with New York." (Objections at 10.) However, Defendants' objections are clearly belied by the very words of Plaintiff's complaint.

Exercising personal jurisdiction is reasonable, and, therefore, satisfies the second prong of the due process analysis as well. If a defendant has sufficient minimum contacts, a court must then determine whether the exercise of personal jurisdiction is "reasonable" under the Due Process Clause. *Chloe*, 616 F.3d at 165 ("There are two components to the due process analysis . . . (1)

the minimum contacts inquiry and (2) the reasonableness inquiry."). The five factors that inform whether exercising jurisdiction does not "offend traditional notions of fair play and substantial justice" and is thus reasonable are:

> (1) the burden on the defendant, (2) the interests of the forum State, and (3) the plaintiff's interest in obtaining relief . . . (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* at 164.

On balance, these factors support the exercise of personal jurisdiction. As to the first factor, while X Gear Defendants protest that exercising jurisdiction would impose an enormous burden on the out-of-state defendants "to litigate in a forum halfway across the country," (Objections at 10), this argument "would provide defendant[s] only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." *Bank Brussels Lambert*, 305 F.3d at 129–30; *see also MacDermid, Inc. v. Deiter*, 702 F.3d 725, 731 (2d Cir. 2012) (holding that burden due to travel on foreign defendant insufficient to overcome its minimum contacts). Second, New York has a "manifest interest in providing effective means of redress for its residents," including Plaintiff. *Chloe* 616 F.3d at 173 (citation and internal quotation marks omitted). Third, Plaintiff has an interest adjudicating this matter in New York where he resides. (*See* Compl. ¶ 8.) The last two factors are neutral. As a result, exercising personal jurisdiction over X Gear Defendants is consistent with New York's long-arm statute and constitutional due process.[2]

---

[2] X Gear Defendants object that, at minimum, Tydlacka should be dismissed from the case for lack of jurisdiction because Plaintiff fails to demonstrate that Tydlacka was a "primary actor[] in the transaction in New York," as required by New York's long-arm statute. (Objections at 7.) However, Plaintiff does in fact make this allegation by asserting that Tydlacka saw Plaintiff's ORIGINAL WORK Logo at a trade show, incorporated X Gear, and began selling items bearing an almost identical logo to New York consumers through X Gear's website. (Opp'n at 2.) In a similar vein, X Gear Defendants argue that Defendant Tydlacka should be dismissed from the case because a corporate employee may be personally

## III. COUNT I IS DISMISSED

The Report properly concluded that Count 1 of the complaint, for trademark infringement under the Lanham Act, should be dismissed against all Defendants. Section 32(1) of the Lanham Act, 15 U.S.C. § 1114, "protects only registered trademarks," and Plaintiff fails to allege anywhere in his complaint that he possesses a registered trademark in the ORINGIAL MARK Logo. (*See* Report at 18–19.) Count 1 is, therefore, dismissed for failure to state a claim.

## IV. COUNT II IS DISMISSED AS TO PUBLISHING DEFENDANTS, BUT NOT AS TO X GEAR DEFENDANTS

Plaintiff's second cause of action, for unfair competition and false designation of origin under the Lanham Act, is dismissed with respect to Publishing Defendants. However, Count II survives X Gear Defendants' motion to dismiss.

### A. Publishing Defendants

To state a claim for unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), a plaintiff must establish "that it has a valid mark entitled to protection and that defendant's use of it [in commerce] is likely to cause confusion." *Gruner + Jahr USA Publ'g, a Div. of Gruner + Jahr Printing and Pub. Co. v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993).

The Report determined properly that the complaint is devoid of any allegations regarding the Publishing Defendants' use of Plaintiff's logo in commerce. Here, the only allegations regarding the two Defendants is that GoDaddy provides web hosting services to X Gear

---

liable for trademark or copyright infringement only if contributory or vicarious liability is pled adequately. (Objections at 4–6.) However, this objection largely tracts X Gear Defendants' arguments made in their motion to dismiss that were considered and rejected by Magistrate Judge Gorenstein in issuing his Report. (*See* Mem. of Law in Support at 22–23); *see Azkour v. Haouzi*, No. 11 Civ. 5780 (RJS), 2017 WL 3016942, at *4 (S.D.N.Y. July 17, 2017) (noting that objections that simply rehash or reiterate the original briefs to the magistrate judge do not suffice to invoke *de novo* review).

Defendants and Instagram provides an application on which X Gear Defendants publish images of the infringing logo. (Compl. ¶¶ 33–35.) Absent any allegation concerning use of Plaintiff's logo in commerce, Count II must be dismissed against Publishing Defendants.

**B.    X Gear Defendants**

As to X Gear Defendants, the Report concluded correctly that Plaintiff sufficiently alleges that the use of Plaintiff's valid mark by both Defendants likely causes confusion among consumers. X Gear Defendants object that Plaintiff fails to establish that his mark is valid and entitled to protection because Plaintiff does not allege "that his logo is inherently distinctive or that it has achieved a secondary meaning. Plaintiff merely pits the two designs side by side—which only accentuates the ***differences*** in the two designs." (Objections at 14 (emphasis in original).)

Trademarks "are often classified in categories of generally increasing distinctiveness; following the classic formulation set out by Judge Friendly, they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976)). Marks that are arbitrary, fanciful, or suggestive are considered "inherently distinctive" and are automatically entitled to protection under the Lanham Act. *See Two Pesos*, 505 U.S. at 768. Marks that are descriptive are entitled to protection only if they have acquired a "secondary meaning" in the marketplace. *Id.* at 769.

While Plaintiff never uses the word "distinct" or "distinctive" in his complaint, an examination of Plaintiff's logo demonstrates that Plaintiff's mark is inherently distinctive. Plaintiff's logo is a cartoon depiction of a bear's head with doe eyes that are of different shape and color, and two bandages crisscrossing to cover the bear's mouth. (*See* Compl. ¶ 31.) While "[b]asic geometric shapes, basic letters, and single colors are not protectable as inherently distinctive . . . stylized letters or shapes are not basic, and are protectable when original within the

relevant market." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 116 (2d Cir. 2006). Thus, Plaintiff has sufficiently pled that his ORIGINAL WORK Logo is a valid mark entitled to protection.

X Gear Defendants also object that Plaintiff fails to plead that Defendants' use of the mark likely causes confusion among consumers. In evaluating the likelihood of confusion, courts consider the *Polaroid* factors. *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). These factors include: (1) the strength of the mark, (2) the degree of similarity between the two marks, (3) the competitive proximity of the products, (4) actual confusion, (5) the likelihood the plaintiff will bridge the gap, (6) the defendant's good faith in adopting its mark, (7) the quality of the defendant's products, and (8) the sophistication of the purchasers. *Id.* Likelihood of confusion is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss. *Scotch & Soda B.V. v. Scotch and Iron LLC*, No. 17 Civ. 4561 (ALC), 2018 WL 2224997, at *3 (S.D.N.Y. May 15, 2018). Hence, motions to dismiss for failure to plead this element are generally granted "only if no reasonable factfinder could find a likelihood of confusion on any set of facts that plaintiff could prove." *Id.* (citation and internal quotation marks omitted).

Here, Plaintiff's ORIGINAL WORK Logo is inherently distinctive, for the reasons stated earlier. Plaintiff alleges that X Gear Defendants' logo "is a substantial identical replication and copy of plaintiff's ORIGINAL WORK Logo." (*See* Compl. ¶¶ 31.) X Gear Defendants also allegedly market and sell their products at trade shows, online, and through various media platforms, such as Instagram, just like Plaintiff. (*Id.* ¶¶ 18, 21–23, 35; Opp'n at 2.) As a result of X Gear Defendant's conduct, Plaintiff further alleges that there is a likelihood of confusion in the marketplace and instances of actual confusion. (Compl. ¶¶ 4, 32.) These allegations suffice to survive a motion to dismiss. *See, e.g., Canon U.S.A., Inc. v. F&E Trading LLC*, No. 15 Civ. 6015 (DRH)(AYS), 2017 WL 4357339, at *6 (E.D.N.Y. Sept. 29, 2017) (finding plaintiff's allegations

that Defendants' bad faith and intentional marketing and sale of a product with the infringing logo were intended to, and are likely to, cause confusion to be sufficient).

X Gear Defendants object that the Report did not consider all of the *Polaroid* factors in reaching its conclusion of likelihood of confusion. (Objections at 15.) However, at the motion to dismiss stage, courts are not required to address all of the factors in order to find adequate pleading of a likelihood of confusion. *See World Trade Ctrs. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, No. 15 Civ. 7411 (LTS), 2016 WL 8292208, at *2 (S.D.N.Y. Dec. 15, 2016). With respect to the first two *Polaroid* factors, Defendants also object that the Report merely "reasserted that Plaintiff's mark is 'inherently distinctive' and pointed to Plaintiff's allegations about the popularity in his design—without acknowledging the differences between the two marks or the irrelevance of those allegations to the analysis." (Objections at 15.) Yet, the degree of a mark's distinctiveness is relevant to assessing the strength of the mark. *See Lopez v. Gap, Inc.*, 883 F. Supp. 2d 400, 430 (S.D.N.Y. 2012). Furthermore, while the Report may not have explicitly discussed the differences between the two marks, the marks undoubtedly share many more similarities than differences. Both marks are cartoon depictions of a bear head with an asymmetrically rounded face, large doe eyes of different colors, with the left iris in a lighter shade than the right, rounded ears, and a guitar-pick nose. (*See* Compl. ¶ 31.)

Defendants also object that the Report improperly credited Plaintiff's allegation that he has encountered X Gear's products online and at trade shows as being sufficient to show that the products proximately compete with each other. However, aside from citing to a Second Circuit case in which the circuit actually affirmed the district court's finding of competitiveness, X Gear Defendants provide no basis or support for this objection. (*See* Objection at 14–15.)

X Gear Defendants also argue that Plaintiff's second cause of action fails because it is duplicative of his copyright infringement claim. (Objections at 11.) They argue that Plaintiff fails

- 12 -

to identify any trademark outside of Plaintiff's protected copyright. (*Id.*) However, Plaintiff alleges that he has a copyright and trademark in his ORIGINAL WORK Logo, (Opp'n at 5), and that X Gear Defendants have infringed his mark by selling clothing bear a replica logo, which has caused confusion among consumers as to the source of the products. (Compl. ¶¶ 38–47.); *see Ward v. Andrews McMeel Pub., LLC*, 963 F. Supp. 2d 222, 236 (S.D.N.Y. 2013) ("[C]ourts have consistently held that a product's different qualities can be protected simultaneously, or successively, by more than one of the statutory means for protection of intellectual property.") (citation and internal quotation marks omitted). Plaintiff also alleges that Defendants not only copied his logo, but that they have falsely represented themselves as the creator and owner of the logo, which has resulted in consumer confusion. (Compl. ¶¶ 39–41.); *see Webber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 463 (S.D.N.Y. 1999) ("[To allege a separate trademark infringement claim], [t]he [plaintiff] must make a greater showing that the designation of origin was false, was harmful, and stemmed from some affirmative act whereby [defendant] falsely represented itself as the owner.").

## V. COUNT III IS DISMISSED AS TO PUBLISHING DEFENDANTS, BUT NOT AS TO X GEAR DEFENDANTS

The Report properly concluded that Count III of the complaint, for common law trademark infringement and unfair competition, should be dismissed as to Publishing Defendants, but not as to X Gear Defendants for the same reasons as those stated above. "The elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act claims." *Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 351 (S.D.N.Y. 2014) (citation and internal quotation marks omitted). A party asserting a claim for unfair competition under New York common law must also allege bad faith on the part of the defendant. *See Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 485 (2d Cir. 2005).

Plaintiff adequately pleads "bad faith" by alleging that X Gear Defendants' infringement was intentional. *See C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 244 (S.D.N.Y. 2013) ("Bad faith is presumed where the defendant intentionally copied the plaintiff's mark.") (citation and internal quotation marks omitted). Plaintiff alleges that Defendant Tydlacka saw Plaintiff's product at a trade show in Texas, formed X Gear, and began selling and offering for sale clothing items bearing an almost identical image and design to that of Plaintiff's logo. (Opp'n at 2; *see* Compl. ¶¶ 3, 47.) Thus, Publishing Defendants' motion to dismiss is granted with respect to Count III of the complaint, while X Gear Defendants' motion to dismiss that claim is denied.

X Gear Defendants object that Plaintiff's common law trademark infringement claims are preempted by his federal copyright claim (Count IV). (Objections at 12–13.) The analysis for determining preemption is similar to that for duplication. *See Webber*, 63 F. Supp. 2d at 462–64. As such, Plaintiff's common-law trademark infringement and unfair competition claims are not preempted because Plaintiff alleges likelihood of confusion, in addition to the mere copying of Plaintiff's logo by Defendants, which resulted from Defendants' active deception of the public. *See Wolstenholme v. Hirst*, 271 F. Supp. 3d 625, 642 (S.D.N.Y. 2017) (noting that an allegation that "the use of the plaintiff's trademark on the goods or an active deception to customers through words or deeds that the product came from the plaintiff" suffices to survive preemption).

## VI.  CLAIM IV IS DISMISSED AS TO PUBLISHING DEFENDANTS, BUT NOT AS TO X GEAR DEFENDANTS

The Report properly concluded that Count IV for copyright infringement should be dismissed with respect to Publishing Defendants because Plaintiff fails to allege intentional inducement. The basis for Plaintiff's claims against Publishing Defendants' stems solely from the Defendants' alleged inducement of X Gear Defendants to infringe Plaintiff's rights in his logo. (*See* Compl. ¶¶ 34–35 ("[T]here [sic] acts are inducing the infringement as they have reason to

know of Plaintiff's right in said copyright since Plaintiff has provided it with a Notice of Infringement.").) Yet, a claim for inducement requires a showing of intent to promote infringing uses. *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 425 (S.D.N.Y. 2011) (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005)). Plaintiff does not allege intentional inducement by Publishing Defendants anywhere in the complaint.

On the other hand, Plaintiff adequately alleges that X Gear Defendants actually copied Plaintiff's logo, and Plaintiff's logo and Defendants' infringing logo are substantially similar. To state a claim for copyright infringement, plaintiff must allege that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and protectable elements of plaintiff's." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010 (quoting *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 992 (2d Cir. 1999)). Copying may be established circumstantially by showing that "(1) the defendant had access to the copyrighted work and (2) that defendant's work is substantially similar to the plaintiff's copyrightable material." *Softel Inc. v. Dragon Med. and Sci. Commc'ns, Inc.*, 118 F.3d 955, 963 (2d Cir. 1997) (quoting *Comp. Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 701 (2d Cir. 1992)) (internal quotation marks omitted). Here, Plaintiff alleges that after seeing Plaintiff's clothing products and logo at a trade show in Houston, Texas, Defendant Tydlacka formed X Gear, and began selling clothing items "under an almost identical image and design to that of Plaintiff's ORIGINAL WORK® Logo." (Opp'n at 2; *see* Compl. ¶¶ 31, 37 (allegations of substantial similarity).)

X Gear Defendants argue that Plaintiff's allegations of "actual copying" are conclusory and that Plaintiff's allegation that Defendant Tydlacka saw Plaintiff's products at the trade show are mere conjecture or speculation. (Objections at 17.) Plaintiff's allegations of substantial similarity are not conclusory, but rather based on, among other allegations, a side-by-side

comparison of Plaintiff's and Defendant's logo, which demonstrates the extent of similarity between the two logos. (*See* Compl. ¶ 31.); *see Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 766 (2d Cir. 1991) (in determining substantial similarity "what is required is only a visual comparison of the works").

X Gear Defendants contend that, in determining the substantial similarity between the two logos, the Report incorrectly applied the "ordinary observer test" rather than the "discerning observer test." (Objections 17–18.) Defendants argue that the "discerning observer test" should apply simply because Plaintiff alleges that Defendants "copie[d] constituent elements" of his logo, without articulating why this particular allegation would lead to the application of the discerning observer test. (*Id.* at 18.) Even if the discerning observer test applied, "a 'more discerning' observer, considering only protectible elements of [the logos], would consider them] . . . substantially similar not only in shape, layout, and overall appearance, but in the particular expression of their concepts." *Blue Ribbon Pet Prods., Inc. v. Rolf C. Hagen (USA) Corp.*, 66 F. Supp. 2d 454, 461 (E.D.N.Y. 1999).

Thus, Plaintiff has adequately pled copyright infringement against X Gear Defendants.

## VII. COUNTS FIVE AND SIX ARE DISMISSED

The Report correctly concluded that Plaintiff's Fifth and Sixth Counts for unjust enrichment and conversion, respectively, should be dismissed as to Publishing Defendants because they are barred by the Communications Decency Act, 47 U.S.C. § 230(c)(1), which provides broad-based immunity to defendants who are providers of interactive computer services from certain state law claims. (Report 38–40.) The Report also properly determined that these counts should be dismissed against X Gear Defendants because the Copyright Act preempts these state law claims, which are based purely on allegations of unlawful copying. (*Id.* at 40–43.) The Report also found correctly that they should be dismissed for failure to state a claim. (*Id.* at 41–44.)

Plaintiff fails to allege any relationship between himself and Defendants, let alone one that could have caused reliance or inducement. (*Id.* at 42.) Additionally, conversion claims cannot lie for trademarks, which are intangible intellectual property. (*Id.* at 44.)

## VIII. CONCLUSION

Magistrate Judge Gorenstein's Report and Recommendation is ADOPTED in full. Defendants Godaddy, Inc., Godaddy.com, LLC, and Instagram, LLC's motion to dismiss all claims asserted against them is GRANTED.

X Gear and Tydlacka's motion to dismiss for lack of personal jurisdiction is DENIED. Their motion to dismiss Counts One, Five, and Six for failure to state a claim is granted. Their motion to dismiss Counts Two, Three, and Four is denied.

The Clerk of Court is directed to close the motions at ECF Nos. 15, 34, and 44.

Dated: New York, New York
August 28, 2018

SO ORDERED.

GEORGE B. DANIELS
United States District Judge